■ In the Matter of RAYMOND MERLOTTO, Respondent, v TOWN OF PATTERSON ZONING BOARD OF APPEALS et al., Appellants. [841 NYS2d 650]—

In a proceeding pursuant to CPLR article 78 to review a de-

termination of the Town of Patterson Zoning Board of Appeals dated November 21, 2005, which denied so much of the petitioner's application for an area variance as sought permission to construct a second-floor bedroom in the subject premises and to increase the roof line of the subject premises, the appeal is from a judgment of the Supreme Court, Putnam County (O'Rourke, J.), dated February 3, 2006, which granted the petition, annulled the determination, and directed the Town of Patterson Zoning Board of Appeals to issue the requested area variance in its entirety.

Ordered that the judgment is reversed, on the law, with costs, the determination is confirmed, the petition is denied, and the proceeding is dismissed.

In August 2001 the petitioner purchased property consisting of two lots in a RPL-5 district in the Town of Patterson in Putnam County which required five lots to build a residential dwelling. The property was occupied by a 650-square-foot one-story wood frame one-bedroom dwelling which was structurally unsound and had to be demolished.

On October 16, 2002 the petitioner was granted an area variance to build a new dwelling on the lot despite its nonconforming size. After neighboring landowners expressed concerns over parking and well water resources, the area variance was granted on condition that the "[t]he structure as restored shall be built the exact size, shape, and current location of the existing foundation" and meet all code requirements. The petitioner did not seek judicial review of that determination. In November 2002 the zoning board granted him a further area variance to build a six-by-eight-foot front porch and a 10-by-12-foot back deck.

In 2005 the petitioner's request for permission to build a second floor containing a bedroom was denied on the ground that the October 16, 2002 resolution of the Town of Patterson Zoning Board of Appeals (hereinafter the ZBA) required the structure to be built the exact size and shape as the original dwelling. When the Building Inspector was informed that the rough framing for the second floor was already done, he replied that "[t]he work was done without authorization from this department" and in violation of Town of Patterson Zoning Code § 154.62, which set the maximum house size at 458 square feet. The petitioner's new house was 1,546 square feet.

The petitioner applied for an area variance from the requirements of Town of Patterson Zoning Code § 154.62 to increase the permissible square footage. During public hearings on the application, it was noted that the size of the new structure was

more than double the size of the original dwelling, and the "high pitched" roof did not match the roof line of neighbors' houses. The record before the ZBA included tax assessor's photographs of the original dwelling with a gently sloped roof and the current structure with a steeply sloped roof nearly double the original height, and photographs of nearby houses with less sloping roofs.

The ZBA issued an area variance permitting a basement of 511 square feet and a first floor area of 595 square feet for a total livable floor area of 1,106 square feet. However, the ZBA denied an area variance to provide for second floor living space and an increased roof line.

The petitioner commenced the instant proceeding challenging the denial of the area variance for the second floor and increased roof line. In support of his petition, the petitioner submitted photographs of his home and selected homes on the same street and neighboring streets. These photographs were not submitted to the ZBA in support of his application for an area variance.

The Supreme Court granted the petition, finding that the petitioner "converted a ramshackled, dilapidated eyesore into a livable structure" and thus improved the area. The Supreme Court further found that the petitioner's home was the smallest in the area, and several other homes in the neighborhood had pitched roofs and attics converted into additional living space.

"The judicial responsibility is to review zoning decisions but not, absent proof of arbitrary and unreasonable action, to make them" (*Matter of Cowan v Kern,* 41 NY2d 591, 599 [1977]; *see Matter of Pecoraro v Board of Appeals of Town of Hempstead,* 2 NY3d 608, 613 [2004]; *Matter of Arata v Morelli,* 40 AD3d 991 [2007]). Upon judicial review, the general rule is that, absent evidence of illegality, a court must sustain the determination if it has a rational basis in the record before the zoning board (*see Matter of Pecoraro v Board of Appeals of Town of Hempstead, supra* at 613; *Matter of Ifrah v Utschig,* 98 NY2d 304, 308 [2002]; *Matter of Sasso v Osgood,* 86 NY2d 374, 384 [1995]; *Matter of Mattiaccio v Zoning Bd. of Appeals of Vil. of Pleasantville,* 22 AD3d 758, 759 [2005]).

Town Law § 267-b (3) (b) required the ZBA to weigh the benefit to the applicant against the detriment to the health, safety, and welfare of the neighborhood or community if the variance were granted, considering the following five factors: "(1) whether an undesirable change will be produced in the character of the neighborhood or a detriment to nearby properties will be created by the granting of the area variance; (2) whether the benefit sought by the applicant can be achieved by some method,

feasible for the applicant to pursue, other than an area variance; (3) whether the requested area variance is substantial; (4) whether the proposed variance will have an adverse effect or impact on the physical or environmental conditions in the neighborhood or district; and (5) whether the alleged difficulty was self-created, which consideration shall be relevant to the decision of the board of appeals, but shall not necessarily preclude the granting of the area variance." The ZBA was not required to justify its determination with supporting evidence with respect to each of the five factors, so long as its ultimate determination balancing the relevant considerations was rational (*see Matter of Sasso v Osgood, supra* at 385). In determining the facts, the ZBA was not required to follow formal rules of evidence (*see Matter of Von Kohorn v Morrell,* 9 NY2d 27, 32 [1961]; *Matter of Holy Spirit Assn. for Unification of World Christianity v Rosenfeld,* 91 AD2d 190, 201 [1983]). Scientific or other expert testimony is not necessarily required; objections based upon facts may be sufficient (*see Matter of Ifrah v Utschig, supra* at 308). In the instant case the ZBA considered all five of the factors it was required to consider. The ZBA noted that the requested area variance was substantial— legalizing the petitioner's construction of a house more than three times the size permitted under the zoning code. The ZBA further found that the illegal second story would produce an undesirable change in the character of the neighborhood, since a majority of the neighboring homes are one-story structures with lower roof lines and the increased size "may have an adverse effect or impact" on physical and environmental conditions by placing an increased stress on scarce ground water resources. The ZBA noted that the difficulty was self-created, since the petitioner "chose to ignore the previous variances granted" and instead sought a building permit for a structure not in conformance with the variances previously granted. The ZBA found that the "the benefit sought by the applicant can be achieved . . . *by construction of a smaller house in accordance with the area variance previously granted."* The ZBA further noted that pursuant to Town Law § 267-b (3) (c), it was required to "grant the minimum variance that it shall deem necessary and adequate and at the same time preserve and protect the character of the neighborhood."

It must be stressed that the petitioner completed the framing of his 1,546 square foot house and sought approval of the ZBA after the framing of the structure was completed. In so doing, he may be regarded as the quintessential example of self-created difficulties.

The 1,546 square foot structure violated the conditions

imposed by the ZBA in the 2002 area variance that "[t]he structure as restored shall be built the exact size, shape and current location of the existing foundation." Those conditions were not limited to the footprint of the building. The exact size and shape of the original structure was a one-story 650 square foot structure with a gently sloping roof. The ZBA had the right to enforce those conditions in accordance with their plain meaning (see *Incorporated Vil. of Ctr. Is. v Comack*, 39 AD3d 712 [2007]). The fact that variances were granted in 2002, subject to conditions, did not render the lot conforming, justifying additional "creeping variances" in violation of those conditions.

There was no way to achieve the petitioner's objective of building a house with 1,546 square feet of living space without granting a substantial variance from Town of Patterson Zoning Code § 154.62, which set the maximum house size at 458 square feet. The ZBA's finding that the petitioner was required to construct a smaller house merely stated the obvious. The benefit sought by the petitioner—construction of a house with more than three times the allowable living space allowable pursuant to Town of Patterson Zoning Code § 154.62—could not be achieved without rendering Town of Patterson Zoning Code § 154.62 unenforceable for all practical purposes.

The ZBA's finding that the illegal second story and roof line were not in keeping with other houses in the neighborhood was based upon the tax assessor's photographs of other houses in the neighborhood. Upon judicial review, the petitioner attempted to refute that evidence by submitting photographs to the Supreme Court which were not before the ZBA. Since these photographs were not before the ZBA they must be disregarded (see *Matter of Manzi Homes v Trotta*, 286 AD2d 737 [2001]). Nevertheless, the Supreme Court relied upon them.

In any event, there is no evidence in the record that the other houses depicted in those photographs were on substandard lots, or whether they constituted prior nonconforming uses, or whether variances were required to construct the homes depicted in those photographs (see *Matter of Cassano v Zoning Bd. of Appeals of Inc. Vil. of Bayville*, 263 AD2d 506 [1999]). As previously noted, the petitioner's lot was significantly substandard in size, justifying requiring him to build a smaller house.

The ZBA's further finding that the proposed area variance would adversely affect the physical or environmental conditions of the neighborhood is supported by factual statements in the record that water resources were scarce and could not accommodate a larger house.

The ZBA did its best to foster the petitioner's objective of

building a house with increased living space and to help the petitioner out of this predicament of his own making by granting him an area variance allowing for 1,106 square feet of living space, nearly doubling his allowable living space while limiting the required changes to the structure to the illegal second story and roof. As it noted in its determination, the ZBA was required by Town Law § 267-b (3) (c) to "grant the minimum variance that it shall deem necessary and adequate and at the same time preserve and protect the character of the neighborhood."

Since the conclusions of the ZBA are not irrational, arbitrary, or capricious (*see Matter of Sasso v Osgood,* 86 NY2d 374, 386 [1995]), the petition should have been denied, the determination confirmed, and the proceeding dismissed. Rivera, J.P., Goldstein and Carni, JJ., concur.

Dillon, J. (dissenting and voting to affirm the judgment, with the following memorandum): "[L]ocal zoning boards have broad discretion in considering applications for area variances," and courts may set aside a zoning board determination "only where the record reveals that the board acted illegally or arbitrarily, or abused its discretion" (*Matter of Pecoraro v Board of Appeals of Town of Hempstead,* 2 NY3d 608, 613 [2004]). A determination of a zoning board should be sustained if it has a rational basis and is not arbitrary and capricious (*see Matter of Pasceri v Gabriele,* 29 AD3d 805 [2006]). "A determination will be deemed rational if it has some objective factual basis, as opposed to resting entirely on subjective considerations such as general community opposition" (*Matter of Halperin v City of New Rochelle,* 24 AD3d 768, 772 [2005]; *see Matter of Lessings, Inc. v Scheyer,* 16 AD3d 418, 419 [2005]).

In determining whether to grant an area variance, "a zoning board of appeals must weigh the benefit of the grant to the applicant against the detriment to the health, safety and welfare of the neighborhood or community if the variance is granted" (*Matter of Pecoraro v Board of Appeals of Town of Hempstead, supra* at 612; *see Matter of Sasso v Osgood,* 86 NY2d 374, 382, 384 [1995]; Town Law § 267-b [3] [b]). The ZBA is also required to consider: "(1) whether an undesirable change will be produced in the character of the neighborhood or a detriment to nearby properties will be created by the granting of the area variance; (2) whether the benefit sought by the applicant can be achieved by some method, feasible for the applicant to pursue, other than an area variance; (3) whether the requested area variance is substantial; (4) whether the proposed variance will have an adverse effect or impact on the physical or environmental conditions in the neighborhood or district; and (5) whether

the alleged difficulty was self-created, which consideration shall be relevant to the decision of the board of appeals, but shall not necessarily preclude the granting of the area variance" (Town Law § 267-b [3] [b]; *see Matter of Pecoraro v Board of Appeals of Town of Hempstead, supra* at 612-613).

The petitioner was granted an initial area variance in 2002 to construct a dwelling of nonconforming size, with amendments to the variance to permit a front porch and back deck. Those accommodations by the ZBA do not mean that the petitioner's later application to raise his roof line is subject to a stricter standard than any other application governed by the five factors of Town Law 267-b (3) (b).

Here, the ZBA's denial of the roof line variance was arbitrary and capricious, irrational, and not supported by sufficient evidence. In addressing the first of the five factors of Town Law 267-b (3) (b) regarding undesirable change in the character of the neighborhood, the ZBA concluded that an undesirable change would, in fact, occur if the variance was granted, but reached that conclusion with no factual evidentiary support in the record (*see Matter of Marro v Libert,* 40 AD3d 1100 [2007] [no evidence that variance to raise roof, which did not increase the footprint of the home, undesirably affected the character of the neighborhood]; *Matter of Baker v Brownlie,* 248 AD2d 527, 529 [1998]). The record contains no details of which parcels in the neighborhood have single or double-story homes and their geographic relation to the petitioner's house, the lot sizes of area properties, and whether similar variances had been granted or denied to other area homeowners (*see Matter of Hannett v Scheyer,* 37 AD3d 603 [2007]; *cf. Matter of Ifrah v Utschig,* 98 NY2d 304, 307-309 [2002]). Indeed, photographs submitted in connection with the CPLR article 78 proceeding highlight the absence of a sufficient evidentiary ZBA record, and may be considered for that purpose, as the photographs show that several homes in the neighborhood have second stories and most of the structures appear to be larger than the petitioner's residence (*see Matter of Sautner v Amster,* 284 AD2d 540, 541 [2001]; *Matter of Goldsmith v Bishop,* 264 AD2d 775, 776 [1999]; *Matter of Cassano v Zoning Bd. of Appeals of Inc. Vil. of Bayville,* 263 AD2d 506, 507 [1999]).

The second statutory factor addressed by the ZBA, regarding whether benefit to the homeowner could be obtained by other means, was dealt with by the ZBA arbitrarily and capriciously, as the ZBA conclusorily determined the petitioner could construct a "smaller house" without explaining from the evidentiary record how a smaller house could yield the additional

livable square footage sought. The ZBA's finding as to this factor defies logic and is "clearly erroneous" (*see Matter of Baker v Brownlie, supra* at 529).

The third statutory factor, of whether the roof line variance is substantial, was also decided against the petitioner in an arbitrary and capricious fashion, as the raised roof line would not increase the size of the structure's footprint, which was a long-standing condition of the petitioner's permissible construction activities (*accord Matter of Marro v Libert,* 40 AD3d 1100 [2007]).

The fourth statutory factor regarding adverse impacts upon the environmental conditions of the neighborhood was resolved by the ZBA arbitrarily and capriciously, and without an evidentiary basis in the record. The ZBA determined that the movement of the sole bedroom from the main floor to the attic space would add stress to limited water and sewer resources, but there is no evidence to support the ZBA's speculative conclusion that the home would house a greater number of residents who would use additional water and sewer services. To the contrary, the record contains the petitioner's unrefuted assertions that with the roof line variance, the house would remain a one-bedroom/one bathroom structure.

Accordingly, four of the five factors that must be considered under Town Law § 267-b (3) (b) were decided by the ZBA against the petitioner either without an evidentiary basis in the record or despite contrary evidence in the record. The only evidence in the record against the petitioner is with respect to the fifth factor, regarding the petitioner's self-creation of his difficulties (*see Matter of Becvar v Scheyer,* 250 AD2d 842, 843 [1998]), but this factor, standing alone, is not determinative (*see Matter of Sasso v Osgood, supra* at 385; *Matter of Bianco Homes v Weiler,* 295 AD2d 505, 506 [2002]).

I am mindful that under *Pecoraro v Board of Trustees of Town of Hempstead (supra)* and *Matter of Ifrah v Utschig (supra),* courts are not to substitute their judgment for that of a local zoning board where the ZBA's determination has a rational basis supported by substantial evidence upon a developed record (*see Pecoraro v Board of Trustees of Town of Hempstead, supra* at 613; *Matter of Ifrah v Utschig, supra* at 308). *Pecoraro* and *Matter of Ifrah* are not controlling on this point, as here, no record was developed supporting the ZBA's conclusions as to most of the factors of Town Law 267-b (3) (b).

Rather than being founded upon evidence, the ZBA's determination appears to have been instead based upon general, unsupported complaints of several neighboring property owners. "The

mere presence of community opposition and the unsupported conclusory allegations of neighboring property owners does not justify the denial of applications for area variances (*Matter of Lessings, Inc. v Scheyer,* 16 AD3d 418, 418-419 [2005]; *see Matter of Ifrah v Ultschig, supra* at 308; *Matter of Marro v Libert,* 40 AD3d 1100 [2007]).

The appellants' remaining contentions are without merit.

I therefore vote to affirm the determination of the Supreme Court.